## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------------X
REGINA MOORE and MICHAEL AYERS,       :
                                      :
      Plaintiffs,                     :
                                      :
v.                                    :  Civil No. 3:08CV1946(AWT)
                                      :
LESLEY MARA, LISA FLOWERS-MURPHY      :
BRETT RAYFORD, JEANNETTE PEREZ,       :
JEANNE GAVEY, PATRICIA COLONGHI,      :
LINDA UNKELBACH, KAREN FOWLER,        :
GREG HADLEY, LAURA BURROWS and        :
THE STATE OF CONNECTICUT              :
DEPARTMENT OF CHILDREN AND            :
FAMILIES/CONNECTICUT JUVENILE         :
TRAINING SCHOOL                       :
                                      :
      Defendants.                     :
-----------------------------------x
```

## RULING ON MOTION TO DISMISS

The plaintiffs, Regina Moore ("Moore") and Michael Ayers

("Ayers"), have brought this action against Lesley Mara ("Mara"),

Lisa Flowers-Murphy ("Flowers-Murphy"), Brett Rayford ("Rayford"),

Jeannette Perez ("Perez"), Jeanne Gavey ("Gavey"), Patricia

Colonghi ("Colonghi"), Linda Unkelbach ("Unkelbach"), Karen Fowler

("Fowler"), Greg Hadley ("Hadley"), Laura Burrows ("Burrows"), and

the State of Connecticut Department of Children and

Families/Connecticut Juvenile Training School ("DCF"), setting

forth claims of racial discrimination in violation of Title VII of

the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"),

racial discrimination and retaliation in violation of the

Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-

60 et seq. ("CFEPA"), violations of 42 U.S.C. § 1983 and the 14th

Amendment to the United States Constitution, negligent infliction of emotional distress, and intentional infliction of emotional distress. The defendants have moved to dismiss the plaintiffs' Corrected Second Amended Complaint (Doc. No. 63) pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is being granted in part and denied in part.

## I.  FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

The plaintiffs are both African American employees of DCF. Moore is employed as a Clinical Nurse 2/Head Nurse; Ayers is employed as a Youth Service Officer.

Moore began working for DCF in 1998. In 2002, she was investigated after she complained about an incident involving her white co-worker. Though her co-worker was not investigated because of the incident, Moore was. As a result of the investigation she was placed on administrative leave for workplace violence and ordered to undergo a psychological evaluation.

Shortly after she returned to work in September 2002, Colonghi, the Director of Nursing Services, eliminated the position of charge nurse on Moore's shift, and shortly thereafter transferred her to the evening shift. Despite Moore's being transferred, the written notice of shift changes failed to mention her. Prior to her transfer, Moore was the only African American nurse of her level on the shift.

In March 2003, Moore chose not to apply for a position of

Temporary Nurse Supervisor, but was informed of the opening at Colonghi's direction even though Colonghi had already appointed someone else- a white nurse with less seniority- to the position.

In 2007, Moore's assignment was changed twice- once without notice after she returned from vacation and once when a schedule change had been planned in advance. At the time of the schedule change that had been planned in advance, Moore was the only person on her shift whose schedule was changed. In addition, at meetings in 2008, Moore's comments were ignored by Fowler, who was Director of Nursing, and her conduct was singled out by Unkelbach, a Nursing Supervisor. Moore alleges that all of the above incidents were racially discriminatory.

Like Moore, Ayers began working for DCF in 1998. On November 2, 2001, Ayers sustained a spine injury while restraining of an out-of-control youth. When he notified Hadley, his supervisor, of the incident and that he needed to seek medical attention, Hadley informed him that there was insufficient staff coverage to release Ayers from work.

On or about July 29, 2002, Ayers's chiropractor recommended that he work light duty as a result of the injury. Ayers's request to work light duty for 90 days was granted. After those 90 days were completed, Ayers's chiropractor recommended extending the light duty assignment, but Ayers was denied the extension and was instead placed on workers' compensation, although similarly-situated white employees had been granted extensions of light

duty.  Ayers filed a grievance, but his grievance was denied.

In August 2002, Ayers applied for a Building and Grounds Patrol Officer Position with DCF, but Burrows, DCF's Employment Specialist, denied him the position.  In addition, although his chiropractor recommended three times that Ayers return to work, the recommendation was rejected, and he was kept on workers' compensation for several additional months before returning to work.  On one occasion he was first told that he could return to work, but the decision was reversed by Perez, a Human Resource Officer, because his doctor's note was deemed inadequate.  Although the chiropractor recommended that he not work more than eight hours in a day, Ayers was told he must return to work without restrictions.  When he did return to work, Ayers was forced to work overtime, although other similarly-situated Youth Service Officers who were not African American were not forced to work overtime.

On July 20, 2004, the plaintiffs and several others filed an action in the United States District Court for the District of Connecticut ("Davis I") against DCF, Mara, Flowers-Murphy, Perez, Rayford, Colonghi, Charles Kinard, Burrows, Hadley, and Gavey setting forth claims of race discrimination in violation of Title VII and CFEPA, violation of 42 U.S.C. § 1983, negligent infliction of emotional distress, and intentional infliction of emotional distress.  After the plaintiffs failed to file an objection to the defendants' motion to dismiss, the case was dismissed pursuant to

4

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure as to all defendants except Mara and Hadley, as to whom the case was dismissed without prejudice because of failure to prosecute.  Judgment was entered on January 3, 2006.

On March 29, 2007, the plaintiffs and others filed another action in the District of Connecticut against Mara, Flowers-Murphy, Perez, Rayford, and Gavey setting forth claims of violation of 42 U.S.C. § 1983.  The case was dismissed on November 21, 2008 for insufficiency of service of process and lack of personal jurisdiction.  See Davis v. Mara ("Davis II"), 587 F. Supp. 2d 422 (D. Conn. 2008).

This action was filed on December 23, 2008.

## II.  LEGAL STANDARD

A claim is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the claim. Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182 (2d Cir. 1996).  On a Rule 12(b)(1) motion to dismiss, the party asserting subject matter jurisdiction "bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurechione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  When reviewing a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence

outside the pleadings.[1]  See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

With the exception of the above, the standards for dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) are identical.  See Lerner v. Fleet Bank, N.A., 318 F.3d 113, 128 (2d Cir. 2004). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, the courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct.

---

[1]Because the only documents outside the pleadings that the court is considering here are from the court's own records, see infra Part III.A., because it is not clear that immunity defenses should be considered pursuant to Rule 12(b)(1), see State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007), and because drawing inferences in favor of the plaintiffs rather than requiring them to prove subject matter jurisdiction by a preponderance of the evidence does not change the outcome, the court considers the entire motion as being brought under Rule 12(b)(6).

1937, 1949 (2009) (quoting Twombly, 550 U.S. at 557). While
"[f]actual allegations must be enough to raise a right to relief
above the speculative level, on the assumption that all
allegations in the complaint are true (even if doubtful in fact),"
Twombly, 550 U.S. at 555 (2007) (citations omitted) (footnote
omitted), the plaintiff is required to plead "only enough facts to
state a claim to relief that is plausible on its face."  Id. at
570.

     "The function of a motion to dismiss is 'merely to assess the
legal feasibility of the complaint, not to assay the weight of the
evidence which might be offered in support thereof.'"  Mytych v.
May Dept. Stores Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999)
(quoting Ryder Energy Distribution v. Merrill Lynch Commodities,
Inc., 748 F.2d 774, 779 (2d Cir. 1984)).  "The issue on a motion
to dismiss is not whether the plaintiff will prevail, but whether
the plaintiff is entitled to offer evidence to support his
claims."  United States v. Yale New Haven Hosp., 727 F. Supp. 784,
786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 236).

## III. DISCUSSION

### A.  Res Judicata

The defendants argue that the plaintiffs' claims are barred by the
doctrine of res judicata.

>          "Under . . . federal law, the doctrine of res
>          judicata, or claim preclusion, provides that '[a]
>          final judgment on the merits of an action
>          precludes the parties . . . from relitigating

issues that were or could have been raised in that action.'" If a valid and final judgment has been entered on the merits of a case, "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

Duane Reade, Inc. v. Saint Paul Fire & Marine Ins. Co., 600 F.3d 190, 195-96 (2d Cir. 2010) (citations omitted). "The defense of res judicata may be raised on a Rule 12(b)(6) motion to dismiss if 'all relevant facts are shown by the court's own records,'" of which the court can take judicial notice. Chien v. Skystar Bio Pharm. Co., 623 F. Supp. 2d 255, 260 (D. Conn. 2009) (quoting AmBase Corp. v. City Investing Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003)).

In order to prove the affirmative defense of res judicata, a party must show: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. N.Y. City Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000). The Second Circuit has also formulated the test in a slightly different form.[2] See Esquire Trade & Finance, Inc. v. CBQ, Inc., 562 F.3d 516, 520 (2d Cir. 2009) (citation omitted) ("The doctrine of res judicata 'bars later litigation if an

_____

[2]The court uses the former test, as it is the one used by the parties, and proceeding under the other test would not affect the outcome of the court's analysis.

earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'").

In this case, the defendants point to two prior actions involving substantially the same parties and causes of action.[3] The first action was dismissed as to all defendants but two after the court granted a motion to dismiss based on lack of subject matter jurisdiction, sovereign immunity, the Eleventh Amendment, failure to exhaust, and failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The case was dismissed as to the other two defendants because of failure to prosecute.

While "dismissal for failure to state a claim is a final judgment on the merits and thus has res judicata effects," Berrios v. N.Y. City Hous. Auth., 564 F.3d 130, 134 (2d Cir. 2009), "because a dismissal pursuant to Rule 12(b)(1) is not on the merits, it can have no res judicata effect." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1188 (2d Cir.

---

[3]Because the defendants have failed to meet their burden of demonstrating that the previous actions were adjudicated on the merits, the court will confine its analysis to that issue, and assume for purposes of analysis that the other two requirements of the test have been met, although the court notes that there are two additional defendants in this case who were not sued in Davis I and six defendants present here who were not sued in Davis II.

1996); see also Fed. R. Civ. P. 41(b).[4]  "[A] dismissal that rests both on lack of jurisdiction and alternative rulings on the merits is dominated by the jurisdictional ruling and should not preclude a second action on a claim caught up with the jurisdiction ruling . . . ."  18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4436, at 153 (2d ed. 2002).  "The burden is on the party seeking to invoke res judicata to prove that the doctrine bars the second action." Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 369 (2d Cir. 1997).

In Davis I, the court did not explicitly dismiss any claim pursuant to Rule 12(b)(6).  The ruling states that the motion to dismiss was made pursuant to Rules 12(b)(1) and (b)(6), and that the court was granting the motion "[d]ue to the absence of any objection by plaintiffs, and based upon a review of the motion to dismiss and accompanying memorandum of law." (Def's Mot. Dismiss Corrected Second Am. Compl. Filed by Regina Moore and Michael Ayers ("Def.'s Mot.") (Doc. No. 66) Ex. 1-B, at 1-2.) Accordingly, because the defendants did not meet their burden of

---

[4]Federal Rule of Civil Procedure 41(b) provides that
    [i]f the plaintiff fails to prosecute or to comply
    with these rules or a court order, a defendant may
    move to dismiss the action or any claim against it.
    Unless the dismissal order states otherwise, a
    dismissal under this subdivision (b) and any
    dismissal not under this rule--except one for lack of
    jurisdiction, improper venue, or failure to join a
    party under Rule 19--operates as an adjudication on
    the merits.
Fed. R. Civ. P. 41(b).

proving that the jurisdictional ruling does not dominate in this instance, the court concludes that the claims by Moore and Ayers dismissed pursuant to the motion to dismiss in <u>Davis I</u> are not barred by res judicata.

Similarly, the dismissal of claims against defendants Hadley and Mara in <u>Davis I</u> was not on the merits for res judicata purposes. The court dismissed the claims against them "without prejudice pursuant to Rule 41(a)(2) . . . because of plaintiff's [sic] failure to prosecute." (Def.'s Mot. Ex. 1-C, at 1.) Rule 41(a)(2) allows the court to dismiss an action at the plaintiff's request, which does not appear to have been the case here. <u>See</u> Fed. R. Civ. P. 41(a)(2). However, under Rule 41(b), which governs involuntary dismissals, including those where "plaintiff fails to prosecute[,] . . . [u]nless the dismissal order states otherwise, a dismissal . . . operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). Because the dismissal against Hadley and Mara explicitly states that it is without prejudice, it does not operate as an adjudication on the merits. Even assuming that Rule 41(a)(2) was the appropriate provision for the circumstances, a dismissal under that Rule "is without prejudice" unless the order states otherwise. <u>See</u> Fed. R. Civ. P. 41(a)(2).[5]

---

[5]Rule 41(a)(2) provides that
> [e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the

The decision in <u>Davis II</u> is also not on the merits for res judicata purposes.  In that case, the court dismissed the complaint pursuant to Rule 12(b)(5) for insufficiency of service of process and Rule 12(b)(2) for lack of personal jurisdiction.  A dismissal for lack of jurisdiction does not operate as an adjudication on the merits.  <u>See</u> Fed. R. Civ. P. 41(b) ("[A]ny dismissal <u>not</u> under this rule– <u>except</u> <u>one</u> <u>for</u> <u>lack</u> <u>of</u> <u>jurisdiction</u>[–] . . . operates as an adjudication on the merits.") (emphasis added).  Furthermore, rulings pursuant to both Rule 12(b)(5) and Rule 12(b)(2) are jurisdictional rulings.[6]  <u>See, e.g.</u>, <u>Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.</u>, 553 F.3d 1351, 1360 (11th Cir. 2008) ("'Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served.'"); <u>see also</u> <u>Edmond v. Maher</u>, No. DKC-07-2883, 2007 WL 5391046, at *2 n.6 (D. Md. Nov. 13, 2007) (noting that dismissal pursuant to Rule 12(b)(5) "does not constitute a disposition on the merits for purposes of <u>res</u> <u>judicata</u>.").

_____

action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.
Fed. R. Civ. P. 41(a)(2).

[6]The court made reference to this in its ruling in <u>Davis II</u>. <u>See</u> <u>Davis II</u>, 587 F. Supp. 2d. 422, 427 (D. Conn. 2008) ("Because effective service of process on Defendants is a prerequisite to the Court's exercise of personal jurisdiction over them, the insufficiency of service of process on Defendants means the Court lacks personal jurisdiction over Defendants.").

Accordingly, because because the defendants have not met their burden of demonstrating that the decisions in <u>Davis I</u> and <u>Davis II</u> were on the merits, the plaintiffs' claims are not barred by res judicata.

**B. CFEPA Claims**

The plaintiffs concede that the Eleventh Amendment bars their CFEPA claims in federal court. Accordingly, the motion to dismiss is being granted with respect to the plaintiffs' CFEPA claims.

**C. Negligent Infliction of Emotional Distress**

In <u>Perodeau v. City of Hartford</u>, 259 Conn. 729, 762 (2002), the Supreme Court of Connecticut concluded that "the societal costs of allowing claims for negligent infliction of emotional distress in the context of ongoing employment are unacceptably high." Thus, "employees may not bring claims for negligent infliction of emotional distress for 'conduct occurring within a continuing employment context' . . . ." <u>Kunajukr v. Lawrence & Mem'l Hosp., Inc.</u>, No. 3:05-CV-1813 (JCH), 2009 WL 651984, at *27 (D. Conn. Jan. 12, 2009) (quoting <u>Perodeau</u>, 259 Conn. at 762). In fact, "[n]egligent infliction of emotional distress in the employment context arises <u>only</u> where it is 'based upon unreasonable conduct of the defendant in the <u>termination</u> process.' " <u>Parsons v. United Tech. Corp.</u>, 243 Conn. 66, 88-89 (1997) (emphasis added) (internal citation omitted); <u>see also</u> <u>Kunajukr</u>, 2009 WL 651984, at *27 ("Claims may be brought for negligent

13

infliction of emotional distress for conduct occurring during an employment termination."). The plaintiffs have not alleged that their employment was terminated. Accordingly, the motion to dismiss is being granted with respect to the plaintiffs' negligent infliction of emotional distress claim.

### D. Intentional Infliction of Emotional Distress

In order to establish liability of a defendant for intentional infliction of emotional distress under Connecticut law, a plaintiff must show:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000) (internal quotation marks omitted). To be liable for intentional infliction of emotional distress, a defendant's conduct must "exceed[] all bounds usually tolerated by decent society." Id. (internal quotation marks omitted). Routine employment actions, even if made with improper motivations, do not constitute extreme or outrageous behavior. See Adams v. Hartford Courant, Tribune Co., No. Civ.3-03CV-0477(JCH), 2004 WL 1091728, at *4 (D. Conn. May 14, 2004); see also Perodeau v. City of Hartford, 259 Conn. 729, 757 (2002) (noting that individuals in the workplace should expect to be subject to "decisions . . . involving transfer, demotion,

14

promotion, and compensation," as well as "workplace gossip, rivalry, personality conflicts," and similar annoyances).

Even conduct that is unlawful under Title VII does not necessarily arise to the level of severity and outrageousness that would support liability for intentional infliction of emotional distress. See, e.g., Robinson v. City of New Haven, 578 F. Supp. 2d 385, 391 (D. Conn. 2008); Pascal v. Storage Tech. Corp., 152 F. Supp. 2d 191, 214 (D. Conn. 2001). Whether a defendant's conduct is sufficiently severe as to satisfy the "extreme and outrageous" element is initially a question for the court to determine. See Appleton, 254 Conn. at 210.

In this case, Moore alleges that she was discriminatorily disciplined after a dispute with a white co-worker, including being forced to undergo a psychological evaluation; being dicriminatorily reassigned; being notified of the availability of a supervisory position after a white employee with less seniority had already been appointed to the position; and being micromanaged; and that her input at work was ignored for discriminatory reasons. Ayers alleges that Hadley did not allow him to seek medical attention after he injured his spine on the job, that he was discriminatorily denied an extension of light duty despite his doctor's recommendation that it be continued, that he was denied reassignment to a position in which he would be less likely to be injured, that he was forced to work overtime

despite his doctor's recommendation that he work at most eight hours a day, and that he was denied the opportunity to return to work in a timely manner. Taking all facts alleged as true and drawing all inferences in favor of the plaintiffs, the plaintiffs have failed to allege conduct that was extreme and outrageous, with the exception of Ayers's claim against Hadley for denying him the opportunity to seek medical attention for an injury to his spine when he needed it. See, e.g., White v. Martin, 23 F. Supp. 2d 203, 208 (D. Conn. 1998), aff'd, 198 F.3d 235 (2d Cir. 1999) (holding that an employer's alleged gender discrimination, including denial of a promotion, discipline, and harassment, was not extreme or outrageous conduct); DeLeon v. Little, 981 F. Supp. 728, 738 n.8 (D. Conn. 1997) (holding that a supervisor's conduct was not sufficiently outrageous where the supervisor's "alleged outrageous conduct include[d] her orders to purchase illegal drugs, . . . threats to terminate Plaintiff's employment and replace her with an individual of another race, implementation of discriminatory sick time policies, monitoring of attendance at work, and repeated degrading and humiliating criticism of Plaintiff in the presence of others"); cf. Berry v. Loiseau, 223 Conn. 786, 793 (1992) (affirming judgment on claim for intentional infliction of emotional distress where the "jury could reasonably have found" that "[d]uring the course of the plaintiff's employment . . . he was subjected to repeated physical abuse[,] .

. . including being punched and choked.").

Accordingly, the motion to dismiss is being granted with respect to the intentional infliction of emotional distress claim, except with respect to Ayers's claim against Hadley for denying him the opportunity to seek medical treatment for an injury to his spine when he needed it.[7]

### E.    Certain Individual Defendants' Personal Involvement re the § 1983 Claims

The defendants argue that the plaintiffs have failed to allege personal involvement by several of the individual defendants and that the § 1983 claims should therefore be dismissed with respect to these defendants.  Specifically, neither Moore nor Ayers names defendants Mara, Flowers-Murphy, Rayford, or Gavey in any of the factual allegations in their complaint.[8]  "In a § 1983 suit . . . the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. . . . [P]urpose rather than knowledge is required

---

[7]Ayers's claim against Hadley for intentional infliction of emotional distress is being dismissed as untimely, however.  See infra Part III.H.

[8]The court notes that in Davis I, in which the allegations setting forth the claims of both Moore and Ayers are substantially similar their allegations in the present case, defendants Mara, Flowers-Murphy, Rayford, and Gavey are named by plaintiffs other than Moore and Ayers; in Davis I, they are not named in the counts brought by either Moore or Ayers.  Perez is also named only by plaintiffs other than Moore and Ayers in Davis I, although Ayers mentions her in his supporting factual allegations.

. . . for an official charged with violations arising from his or her superintendant responsibilities." <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  Although in their memorandum the plaintiffs list a variety of ways in which the personal involvement of a supervisor may be established and cite a number of paragraphs in the complaint in which they set forth factual allegations against various defendants, none of those paragraphs name or set forth facts that support an inference that any of Mara, Flowers-Murphy, Rayford, and Gavey were involved in the conduct on which the complaint is based.  Accordingly, both plaintiffs' § 1983 claims are being dismissed with respect to these defendants.

In addition, Moore does not allege or set forth facts that support an inference of personal involvement by any of Perez, Hadley, and Burrows, and Ayers does not allege or set forth facts that support an inference of personal involvement by any of Colonghi, Unkelbach, and Fowler.  Accordingly, Moore's § 1983 claims are being dismissed with respect to Perez, Hadley, and Burrows, and Ayers's § 1983 claims are being dismissed with respect to Colonghi, Unkelbach, and Fowler.

## F.    Timeliness of Title VII Claims

The defendants argue that the plaintiffs' Title VII claims must be dismissed because although the plaintiffs each received a right to sue notice, as required by Title VII, <u>see</u> 42 U.S.C.

18

§ 2000e-5(f)(1), they received these letters in 2004,[9] and the present suit was brought in 2008, outside the 90-day time limit required by statute.  See id.

The plaintiffs respond that this case presents extraordinary circumstances in which equitable tolling should apply, because the plaintiffs filed timely claims that were later dismissed through "no fault of their own and only because of procedural technical infirmities in their prior complaints." (Pl.'s Mot. [sic] Opp'n to Def.'s Mot. Dismiss Corrected Second Am. Compl. Filed by Regina Moore and Michael Ayers (Doc. No. 72), at 11.)

"A Title VII action must be brought within 90 days of receipt of a[] . . . right-to-sue letter.  In instances where a complaint is timely filed and later dismissed, the timely filing of the complaint does not 'toll' or suspend the 90-day limitations period." Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993) (citation omitted).

> Equitable tolling  is generally considered
> appropriate "where the plaintiff actively pursued
> judicial remedies but filed a defective pleading
> during the specified time period," where plaintiff
> was unaware of his or her cause of action due to
> misleading conduct of the defendant, or where a
> plaintiff's medical condition or mental impairment
> prevented her from proceeding in a timely
> fashion[.] When determining whether equitable
> tolling is applicable, a district court must
> consider whether the person seeking application of
> the equitable tolling doctrine (1) has "acted with

---

[9]The plaintiffs allege in the Corrected Second Amended Complaint that Moore's right to sue letter was dated July 14, 2004 and Ayers's right to sue letter was dated May 19, 2004.

reasonable diligence during the time period she
seeks to have tolled," and (2) has proved that the
circumstances are so extraordinary that the
doctrine should apply.

Zerilli-Edelglass v. N.Y. City Trans. Authority, 333 F.3d 74, 80-
81 (2d Cir. 2003) (citations omitted).  Equitable tolling can
apply to deadlines for filing administrative charges, see, e.g.,
id., or to the deadlines for filing an action in court, see, e.g.,
Washington v. White, 231 F. Supp. 2d 71, 75 (D.D.C. 2002).
However, where a complaint has been filed and then dismissed, as
to some defendants, as the result of a ruling on a motion to
dismiss that was not opposed, and as to the remaining two
defendants, because of failure to prosecute, equitable tolling is
not appropriate under the standard set forth in Zerilli-Edelglass.
See Sain v. Am. Red Cross, 233 F. Supp. 2d 923, 928 (S.D. Ohio
2002) (noting that where a previous complaint has been dismissed
without prejudice, the 90-day time period is not subject to
equitable tolling, because the plaintiff's "failure to comply with
the filing requirement was the fault of neither the defendant nor
the district court."); cf. White, 231 F. Supp. 2d at 75-76
(applying equitable tolling principles to deny motion to dismiss
where the plaintiff submitted a complaint with a application for
leave to proceed in forma pauperis within 90 days of receiving a
right to sue letter but the application was not granted, and the
complaint accordingly not accepted for filing, until 114 days
after receipt of the right to sue letter).  Therefore, the 90 days

continued to run after the complaint was filed and it expired on October 12, 2004 with respect to Moore and August 17, 2004 with respect to Ayers.  Accordingly, the plaintiffs' Title VII claims are untimely and are being dismissed.[10]

### G.  Eleventh Amendment Immunity

The defendants argue that the plaintiffs' § 1983 claims against DCF and any claims against the individual defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.  Because the Eleventh Amendment bars these claims, they are being dismissed.  <u>See, e.g.</u>, <u>Feingold v. New York</u>, 366 F.3d 138, 149 (2d Cir. 2004) (finding that the plaintiff's § 1983 claim against state agency is barred by the Eleventh Amendment); <u>Ford v. Reynolds</u>, 316 F.3d 351, 354 (2d Cir. 2003) ("The Eleventh Amendment bars the award of money damages against state officials in their official capacities."); <u>see also Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

---

[10]The defendants also argue that Moore failed to exhaust administrative remedies with respect to her new allegations that were not present in the original suit.  The plaintiffs respond that these allegations should be deemed exhausted because they are reasonably related to those previously presented to the agency.  However, the court does not reach this issue because the previously-presented claims are being dismissed as untimely.  Accordingly, plaintiff Moore's newly asserted claims cannot be asserted in reliance upon the 2004 release of jurisdiction and must also be dismissed.

## H. Timeliness of § 1983 and Tort Claims

The defendants argue that the plaintiffs' § 1983 and tort claims are barred by the statute of limitations. The plaintiffs respond that the statute of limitations has been tolled because they previously alleged the same claims in prior actions that were dismissed on procedural grounds.

"If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service . . . or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated . . . for any matter of form[,] . . . or if a judgment of nonsuit has been rendered[,] . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . ." Conn. Gen. Stat. § 52-592.

In this case, the plaintiffs brought two prior actions involving § 1983 claims. The first was dismissed for lack of jurisdiction and failure to prosecute, as well as pursuant to Rule 12(b)(6). See supra Part III.A. The second was dismissed for lack of jurisdiction and for insufficiency of service of process. See id. Judgment was entered in the first action on January 3, 2006. However, the plaintiff filed a motion to reopen the case on January 9, 2006. The court denied that motion on June 28, 2006.

The second action was filed on March 29, 2007, within one year of June 28, 2006.[11]  The third action was filed on December 23, 2008, just one month after November 21, 2008, when the second suit was dismissed.

The relevant statute of limitations here is three years for both the § 1983 and tort claims.  See Conn. Gen. Stat. § 52-577; Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) ("In section 1983 actions, the applicable limitations period is found in the general or residual [state] statute [of limitations] for personal injury actions . . . .") (citations omitted) (internal quotation marks omitted).

Ayers and Moore both raised their § 1983 claims in each of the prior actions.  When each of the prior actions was dismissed–the first "for want of jurisdiction" and for failure to prosecute, which is substantially similar to entry of a "judgment of nonsuit", and the second "for want of jurisdiction" and "for insufficient service"– they brought new suits alleging violations of § 1983 within one year.  Conn. Gen. Stat. § 52-592.  Consequently, Connecticut General Statutes § 52-592 operates to toll the statute of limitations with respect to these claims.  Accordingly, the plaintiffs' § 1983 claims arising from events

_____

[11]Although judgment was entered on January 3, 2006, the relevant date for the court's analysis is June 28, 2006 because that is the date of the "determination of the original action."  See Waldman v. Jayaraj, 89 Conn. App. 709, 712 (2005) (finding that an action "was determined at the denial of [the plaintiff's] motion to open the judgment").

alleged to have occurred on or after July 20, 2001- three years
before the first suit was filed- are timely with respect to
parties named as defendants in Moore's and Ayers's § 1983 claims
in all three actions.[12]

However, Hadley and Burrows were named as defendants in Davis
I and in the present action, but they were not defendants in Davis
II.  More than one year passed between June 28, 2006, when the
motion to reopen was denied in Davis I and December 23, 2008, when
this action was filed.  Consequently, Ayers's claims against them
are not saved by Connecticut General Statutes § 52-592.  Thus,
Ayers's claims against Hadley and Burrows are timely insofar as
the events giving rise to those claims occurred on or after
December 23, 2005, three years before the present action was
filed.  However, the only allegations with respect to Hadley
relate to conduct that occurred in November 2001 and the only
allegations with respect to Burrows relate to conduct that
occurred in August 2002.  Accordingly, Ayers's § 1983 claims
against Hadley and Burrows are being dismissed.

In addition to the § 1983 claims, Ayers also has brought a

_____

[12]The court notes that Ayers did not name Perez as a defendant in
Davis I, although he did mention her in his supporting factual
allegations, alleging substantially the same conduct on her part as
he does in the present action.  See supra note 8.  Because the
parties did not brief the issue of whether Connecticut General
Statutes § 52-592 tolls the statute of limitations with respect to
Perez, the court reserves ruling on whether the claims against her
are timely and assumes that they are for purposes of deciding this
motion.

tort claim against Hadley for intentional infliction of emotional distress.  See supra Part III.D.  However, Ayers brought his claim for intentional infliction of emotional distress in the first action and the present action, without bringing it in the second action.  The first action was determined on June 28, 2006, and the present action was brought on December 23, 2008, more than one year later.  Consequently, this claim is not saved by Connecticut General Statutes § 52-592.  See Conn. Gen. Stat. § 52-592 (providing that where timely filed action was not heard on the merits, "the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action . . . .") (emphasis added); Perzanowski v. City of New Britain, 183 Conn. 504, 506 (1981) ("Where two distinct causes of action arise from the same wrong, each is controlled by the statute of limitations appropriate to it. . . . So long as the pendency of the prior action does not prevent enforcement of the remedy sought in the later action, the pendency of the first action will not toll the statute of limitations for the second action.").  Thus, Ayers's intentional infliction of emotional distress claim is timely only if it pertains to events alleged to have taken place on or after December 23, 2005, three years before the present suit was filed.  However, Ayers alleges that the events giving rise to this claim occurred in November 2001.  Accordingly, Ayers's claim of intentional infliction of

emotional distress is untimely and is being dismissed.

## I.   Qualified Immunity

The defendants contend that they are entitled to qualified immunity.  Because the court has determined that the plaintiffs' only otherwise-viable claims are Moore's § 1983 claims with respect to Colonghi, Unkelbach, and Fowler and Ayers's § 1983 claim with respect to Perez,[13] all for events taking place on or after July 20, 2001, the analysis is confined to those claims.

The Supreme Court has set forth a two-part inquiry for resolving whether government officials are entitled to qualified immunity.  "[R]esolving . . . qualified immunity claims[,] . . . a court must decide whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right [and] . . . the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  Pearson v. Callahan, ___ U.S. ___, 129 S. Ct. 808, 815-16 (2009).  It is within the court's discretion to decide which of these steps to address first.  See id. at 818.

Race discrimination in employment may be actionable under § 1983 and brought by a person who is a Title VII plaintiff "so long as the § 1983 claim is based on a distinct violation of a constitutional right," such as a claim for denial of equal protection.  Patterson v. County of Oneida, 375 F.3d 206, 225 (2d

---

[13]But see supra note 12.

Cir. 2004). "Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of . . . the Equal Protection Clause [under § 1983]." Id. However, "a § 1983 claim, unlike a Title VII claim, can be brought against individuals," Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006), and "a plaintiff pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination was intentional." Patterson, 375 F.3d at 226.

Moore has alleged that in August and December of 2007, her work assignment was changed without notice. On the latter occasion she was the only person on her shift who experienced a schedule change. Drawing all inferences in favor of Moore, all three of Colonghi, Unkelbach, and Fowler could have taken part in the discriminatory schedule shifting. She has also alleged that Fowler discriminatorily ignored her input at a meeting in September 2008. In addition, she has alleged that her work performance was scrutinized beyond that of white co-workers, including being singled out by Unkelbach and having her input ignored by Unkelbach and Fowler.

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive-that is[ ] creates an environment that a reasonable

person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [race]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted).  In the context of a motion to dismiss under Rule 12(b)(6), "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment [] of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse"; the Second Circuit has "repeatedly cautioned against setting the bar too high in this context." Id. (internal quotation marks omitted).

For purposes of stating a claim of disparate treatment, "[t]he Supreme Court has held . . . that 'the requirements for establishing a prima facie case under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)] [do not] apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'" Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 71 (2d Cir. 2006) (third alteration in original) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)). Instead, "at the pleading stage in an employment discrimination action a plaintiff must only meet the standard set forth in Fed. R. Civ. P. 8(a), which requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 71-72

(quoting <u>Swierkiewicz</u>, 534 U.S. at 512); <u>see also</u> Fed. R. Civ. P. 8(a).

In this case, Moore's allegations of racially discriminatory schedule changes are sufficient to survive a motion to dismiss. <u>Cf.</u> <u>Kassner v. 2nd Avenue Delicatessen Inc.</u>, 496 F.3d 229, 240 (2d Cir. 2007) ("The timely allegations made on behalf of [one plaintiff] are limited in scope and therefore might be construed as insufficient to constitute a 'materially adverse change' in the terms and conditions of employment were we not required to draw all reasonable inferences on behalf of the plaintiff. . . . [However, her] claims of age discrimination based on certain changes in work station and work shift assignments, although limited, are sufficient to withstand a motion to dismiss under the standard articulated in <u>Swierkiewicz</u>.") (citation omitted). Because this law was clearly established as of August 2007, and Moore makes allegations as to incidents occurring in and after August 2007, the court cannot conclude that the defendants are entitled to qualified immunity with respect to Moore's equal protection claim at this stage.

With respect to Ayers, the defendants argue that he "admits that it was the Workers' Compensation Commissioner . . . (not a defendant here) who 'discriminatorily denied' his doctor's recommendation to return him to work," so the defendants should be entitled to qualified immunity with regard to his claim that he

was discriminatorily denied the ability to return to work. (Defs.' Mem. Supp. Mot. Dismiss. Corrected 2d Am. Compl. (Doc. No. 66-1), at 20.) However, Ayers also alleges that Perez denied his request to return to work on another occasion. Accordingly, the court cannot conclude that the defendants are entitled to qualified immunity with respect to Ayers's equal protection claim at this stage.

### J. Improper Service

The defendants also bring their motion to dismiss under Rules 12(b)(2)and 12(b)(5), arguing that several defendants were improperly served. The case is being dismissed as to some of these defendants on the merits. Accordingly, the court addresses the issue of service only with respect to Colonghi, Unkelbach, and Fowler. The plaintiffs effectively concede that these defendants have not been served. Under Rule 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Accordingly, the plaintiffs shall serve Colonghi, Unkelbach, and Fowler within 30 days. Given that the plaintiffs have been aware of the deficiency in service of process for at least six months, the complaint will be dismissed with prejudice with respect to any of these defendants who has not been properly served within 30 days.

## IV. CONCLUSION

For the reasons set forth above, the Defendants' Motion to Dismiss Corrected Second Amended Complaint Filed by Regina Moore and Michael Ayers (Doc. No. 66) is hereby DENIED with respect to (1) Moore's § 1983 claims against Colonghi, Unkelbach, and Fowler for conduct occurring on or after July 20, 2001; and (2) Ayers's § 1983 claims against Perez for conduct occurring on or after July 20, 2001; and GRANTED with respect to all other claims. The plaintiffs shall serve the Corrected Second Amended Complaint on Colonghi, Unkelbach, and Fowler within 30 days or face dismissal with prejudice of the claims against any of those defendants who is not properly served.

It is so ordered.

Signed this 17th day of August, 2010 at Hartford, Connecticut.

_____/s/AWT_____
Alvin W. Thompson
United States District Judge