```
                      UNITED STATES DISTRICT COURT
                        DISTRICT OF CONNECTICUT

------------------------------------X
REGINA MOORE and MICHAEL AYERS,     :
                                    :
     Plaintiffs,                    :
                                    :
v.                                  : Civil No. 3:08CV1946(AWT)
                                    :
LESLEY MARA, LISA FLOWERS-MURPHY    :
BRETT RAYFORD, JEANNETTE PEREZ,     :
JEANNE GAVEY, PATRICIA COLONGHI,    :
LINDA UNKELBACH, KAREN FOWLER,      :
GREG HADLEY, LAURA BURROWS and      :
THE STATE OF CONNECTICUT            :
DEPARTMENT OF CHILDREN AND          :
FAMILIES/CONNECTICUT JUVENILE       :
TRAINING SCHOOL                     :
                                    :
     Defendants.                    :
------------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

The plaintiffs, Regina Moore ("Moore") and Michael Ayers ("Ayers"), brought this action setting forth claims of racial discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"), racial discrimination and retaliation in violation of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq. ("CFEPA"), violations of 42 U.S.C. § 1983 and the 14th Amendment to the United States Constitution, negligent infliction of emotional distress, and intentional infliction of emotional distress.  The defendants have moved for summary judgment on the plaintiff's remaining claims: (1) Moore's § 1983 race discrimination claims against Patricia Colonghi ("Colonghi"), Linda Unkelbach

("Unkelbach") and Karen Fowler ("Fowler") for conduct occurring on or after July 20, 2001; and (2) Ayers's § 1983 race discrimination claims against Jeannette Perez ("Perez") for conduct occurring during or after July 2001.  For the reasons set forth below, the motion is being granted.

I.   **FACTUAL BACKGROUND**

The plaintiffs are both African American employees of the Connecticut Department for Children and Families ("DCF").

**A. Regina Moore**

Moore began working for DCF in 1998.  She alleges that the following series of incidents constitute adverse employment actions and, in the aggregate, created a hostile work environment.

<u>1. Colonghi</u>

On May 14, 2002, Moore took down pictures of a co-worker's children from the windows of a shared office space.  She explained that she had done so because "when she saw Sara's kids faces, she saw white faces."  Colonghi referred the matter to the human resources department.  The human resources department conducted an investigation that resulted in Moore receiving a written letter reminding her not to touch any of her co-workers personal belongings.  Moore's co-worker was not reprimanded for hanging personal pictures in a shared work space.

On July 17, 2002, Moore became upset when she arrived at

work and discovered that she would need to cover an additional building because of a staff shortage. Moore confronted several other nurses in an effort to determine who had changed her shift assignment without first discussing the situation with her. Several co-workers present at the time filed workplace violence complaints with the human resources department expressing concerns that Moore's behavior was hostile. As a result, Colonghi informed Moore that she was being placed on administrative leave and was required to submit to an Independent Medical Examination prior to returning to work.

In August 2002, an opening appeared for a temporary position as a Nurse Supervisor. Moore did not apply for this position. Unkelbach, a Caucasian nurse with less seniority than Moore, was given the position.

In September 2002, Moore requested that her schedule be changed by moving her to the second shift. Under the union contract, nurses who worked a shift without a supervisor were entitled to "in charge" pay.[1] Shortly thereafter a full time Nurse Supervisor, Phina Kwentoh, was placed on duty during the evening shift. As a result, Moore no longer received "in charge" pay.

---

[1] There is a genuine issue of fact as to whether a nurse had to be without a supervisor for the entire shift to receive in charge pay, or whether not having a supervisor for some portion of the shift was sufficient. The resolution of this issue is immaterial for purposes of the instant motion.

In 2007, Moore's assignment was changed twice - once without notice after she returned from vacation and once when a schedule change had been planned in advance.

### 2. Unkelbach and Fowler

On September 11, 2008, Moore attended a meeting designed as an open discussion allowing nurses to provide input regarding nursing assignments. While Moore took advantage of this opportunity to express her opinions, she feels that Fowler failed to accord those opinions proper weight.

In September 2008 Moore volunteered to work with Unkelbach and Fowler on a new basic health training initiative. While both Unkelbach and Fowler required youth to sign a log after participating in the health training, Moore failed to do so. Fowler sent Moore an e-mail requesting that she have youth sign the log in the future. Moore expressed her opinion that it was unnecessary for youth to sign the form. Fowler explained that she wanted the youth to sign the form to encourage their engagement and accountability in the process as well as to ensure that the agency was in compliance with applicable rules.

### B. Michael Ayers

On or about November 2, 2001, Ayers injured himself during the forcible restraint of a youth. Ayers returned to work on July 29, 2002. Ayers was approved for light-duty status for a period of 90 days. At the end of 90 days Ayers was told that he

4

had to produce a doctor's note indicating he could return to full time status and that otherwise he would not be permitted to work.

Ayers produced a doctor's note requesting that he be exempted from working overtime.  Perez told Ayers that his request to return to work was denied because of a DCF policy requiring employees in Ayers's position be available to work overtime.  In the past, employees in Ayers's position had been able to extend their light-duty status beyond the 90-day period.

### C. Prior Lawsuits

On July 20, 2004, the plaintiffs and several others filed an action in this court, Davis et al v. Children & Families et al, 3:04-cv-01203 (SRU) ("Davis I"), against, among others, Colonghi and Perez,[2] setting forth claims of race discrimination in violation of Title VII and CFEPA, violation of 42 U.S.C. § 1983, negligent infliction of emotional distress, and intentional infliction of emotional distress.  The case was dismissed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure as to Colonghi and Perez.

On March 29, 2007, the plaintiffs and others filed another action in this court, Davis et al v. Mara et al, 3:07-cv-00493 (JBA) ("Davis II") against, among others, Perez, setting forth claims of violation of 42 U.S.C. § 1983.  The case was dismissed

---

[2] While Perez was a named defendant in Davis I, the complaint contained no claim by Ayers against Perez.

on November 21, 2008 because of insufficiency of service of process and lack of personal jurisdiction.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975).  It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully

limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law." Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id.  Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses.  Immaterial or minor facts will not prevent summary judgment.  See

Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment."  Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]."  Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  See Celotex Corp., 477 U.S. at 324.  "Although the moving party bears the initial burden of

establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41.  If the nonmovant fails to meet this burden, summary judgment should be granted.

**III. DISCUSSION**

   **A.   Ayers's § 1983 Claims Against Perez**

The defendants argue that Ayers's § 1983 claims against Perez are barred by the statute of limitations.  The court agrees.

Connecticut General Statutes § 52-577 provides that "No action founded upon a tort shall be brought but within three years from the date of the act . . . complained of."  Conn. Gen. Stat. § 52-577.  This three-year statute of limitations applies to actions brought under § 1983.  See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994).  Connecticut General Statutes § 52-592 provides that:

9

> If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because of insufficient service or return of the writ due to unavoidable accident or the default or neglect of the officer to whom it was committed, or because the action has been dismissed for want of jurisdiction, or the action has been otherwise avoided or defeated by the death of a party or for any matter of form . . . the plaintiff . . . may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.

Conn. Gen. Stat. § 52-592(a). The tolling provisions of § 52-592 "shall apply . . . to any action between the same parties . . . for the same cause of action or subject of action brought . . . to the United States circuit or district court for the district of Connecticut which has been dismissed without trial upon its merits or because of lack of jurisdiction in such court." Conn. Gen. Stat. § 52-592(d).

Here, Ayers's § 1983 claims against Perez are barred by the three year statute of limitations in § 52-577. The events underlying Ayers's claims against Perez occurred in 2003. The instant action was commenced on December 23, 2008. Therefore, to maintain this action, Ayers must show that it comes within the scope of § 52-592. Ayers was a plaintiff in two prior actions pursuant to § 1983. The first suit, Davis I, was commenced on July 20, 2004 and was dismissed for lack of jurisdiction, failure to prosecute and failure to state a claim on which relief can be granted pursuant to Rule 12(b)(6). Judgment was entered in Davis I on January 3, 2006. On January 9, 2006, the plaintiffs filed a

motion to reopen, which was denied on June 28, 2006.  The second suit, Davis II, was filed on March 29, 2007 and was dismissed on November 21, 2008 for insufficiency of service of process and lack of personal jurisdiction.  Consequently, Connecticut General Statutes § 52-592 operates to toll the statute of limitations only with respect to any party who was named as a defendant in Ayers's § 1983 claims in all three actions.

As Ayers concedes, he did not name Perez as a defendant in Davis I.  (See Mem. Opp. Summ. J. at 17.)  Ayers notes that Perez was named as a defendant by other plaintiffs in Davis I, and that he made several factual assertions regarding Perez in that case as well.  Ayers argues that, "[t]he fact that [he] failed to specifically name Perez in Davis I should not preclude his claims against her in the subsequent lawsuits based on any surprise or lack of knowledge of the suit."  (Mem. Opp. Summ. J. at 20.)  However, even if Perez was aware of the complaint and Ayers's factual allegations against her, she could have assumed that Ayers had omitted naming her as a defendant by choice.  "The statute of limitations was enacted precisely to prevent the bringing of stale claims and to protect defendants from the fear of unexpected litigation."  Afrika v. Selsky, 750 F. Supp. 595, 599 (S.D.N.Y. 1990).

 Because Ayers never commenced an action against Perez within the original three-year statute of limitations period, he cannot

11

use § 52-592 to maintain this suit.  See Zipoli v. Conn. Dep't Pub. Safety, No. 3:99CV58(AHN), 1999 WL 608833, at *3 (D. Conn. July 29, 1999).

Ayers argues that the doctrine of equitable tolling should be used to preserve his claims against Perez.  "Equitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable consequences."  Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996).  For equitable tolling to be applicable the plaintiff must have "'acted with reasonable diligence during the time period [he] seeks to have tolled,'" and must "prove[] that the circumstances are so extraordinary that the doctrine should apply."  Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (quoting Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002).

Ayers argues that the omission of Perez from Davis II was due solely to a lack of diligence on the part of the plaintiffs' attorney.  However, "lack of due diligence on the part of plaintiff's attorney is insufficient to justify application of an equitable toll."  South v. Saab Cars USA, Inc., 28 F.3d 9, 12 (2d Cir. 1994); cf. Link v. Wabash RR Co., 370 U.S. 626, 633-34 (1962) (dismissing action for failure to prosecute because "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the

12

acts or omissions of this freely selected agent.")

Because neither § 52-592 nor the doctrine of equitable tolling apply, summary judgment is being granted with respect to the claims against Perez.

### B. Moore's § 1983 Claims Against Colonghi, Unkelbach and Fowler

#### 1. Colonghi

The defendants argue that Moore's § 1983 claims against Colonghi are also barred by the three-year statute of limitations. It is undisputed that Moore named Colonghi as a defendant in Davis I, which was timely commenced on July 20, 2004. Judgment was entered in Davis I on January 3, 2006, and a motion to reopen was denied on June 28, 2006. Davis II was commenced on March 29, 2007, within one year of June 28, 2006. However, as Moore concedes, Colonghi was not named as a defendant in Davis II. (See Mem. Opp. Summ. J. at 21-22.) The current action was filed on December 23, 2008, more than a year after the motion to reopen was denied in Davis I. Because Moore failed to bring an action against Colonghi within one year of the final determination of Davis I, she cannot use Conn. Gen. Stat. § 52-592(a) to maintain this suit.

Moore argues that the doctrine of equitable tolling should be used to preserve her claim against Colonghi. As with Ayers's claims against Perez, Moore argues that it was through no fault of her own, but due to the lack of diligence on the part of the

plaintiffs' attorney, that Colonghi was not named as a defendant in Davis II.  However, as discussed above, a lack of due diligence on the part of the plaintiffs' attorney is insufficient to justify application of the doctrine of equitable tolling.

Because neither § 52-592 nor the doctrine of equitable tolling apply, summary judgment is being granted with respect to the claim against Colonghi.

2.   Unkelbach

Moore alleges that she has been subjected by Unkelbach both to disparate treatment and a hostile work environment.  Race discrimination in employment may be actionable under § 1983 and brought by a person who is a Title VII plaintiff "so long as the § 1983 claim is based on a distinct violation of a constitutional right," such as a claim for denial of equal protection. Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004). "Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of . . . the Equal Protection Clause [under § 1983]."  Id. However, "a § 1983 claim, unlike a Title VII claim, can be brought against individuals," Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006), and "a plaintiff pursuing a claimed . . . denial of equal protection under § 1983 must show that the discrimination was intentional."  Patterson, 375 F.3d at 226.

14

While Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 103) appears to focus on a hostile work environment, Moore cites the legal standard for disparate treatment.  Therefore both theories are discussed.

To establish a prima facie case of Title VII disparate treatment, the plaintiff must show "1) that [she] belonged to a protected class; 2) that [she] was qualified for the position [she] held; 3) that [she] suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

> An "adverse employment action" is one which is "'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  Examples of materially adverse employment actions include "'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation.'"

Id. (quoting Galabya v. New York City Bd. Of Educ., 202 F.3d 636, 640 (2d Cir. 2000)) (alteration in original) (citations omitted).  "We speak of *material* adversity because we believe it is important to separate significant from trivial harms.  Title VII, we have said, does not set forth 'a general civility code for the American workplace.'"  Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)) (emphasis in original).

15

The record does not contain evidence of an adverse employment action taken by Unkelbach against the plaintiff. The record shows that in September 2008, Unkelbach and Fowler both ignored Moore's opinion that the youth should not be required to sign health training logs. Failure to conform DCF procedures to Moore's opinion of what they should be falls far short of the material adversity needed to establish a prima facie case of Title VII disparate treatment. Because there is no evidence that could support a finding of an adverse employment action, no genuine issue of material fact exists with respect to Moore's disparate treatment claim.

Moore also alleges that Unkelbach subjected her to a hostile work environment.

> A hostile work environment claim requires a showing [1] that the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and [2] that a specific basis exists for imputing the objectionable conduct to the employer. The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered.

Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (quoting Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)) (citations omitted).

"This test has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim

16

must also subjectively perceive that environment to be abusive." Id. at 374 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). Generally, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" Id. (quoting Perry, 115 F.3d at 149). "To determine whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Id. Finally, when considering the circumstances it is "important . . . to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals." Id. at 377.

The record shows Unkelbach ignored Moore's opinion regarding a requirement that youth sign health training logs. Also, Moore testified that Unkelbach said "I don't give a 'shit' about you." Finally, Moore testified that Unkelbach said that Moore cannot prove her charges of discrimination. These incidents, taken as a whole, are not objectively severe or pervasive so as to have altered the terms of Moore's employment. "Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude." Id. Unkelbach may have been rude or unjust in her treatment of Moore, but that alone will not constitute a hostile work environment.

17

Moreover, each of these incidents is facially neutral regarding race.

> Facially neutral incidents may be included, of course, among the "totality of the circumstances" that courts consider in any hostile work environment claim, so long as a reasonable fact-finder could conclude that they were, in fact, based on [race]. But this requires some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory.

Id. at 378.

Nothing in the record, other than Moore's speculation regarding Unkelbach's motive, indicates that any of Unkelbach's actions were motivated by discriminatory intent. Even Unkelbach's statement to Moore, "I don't give a 'shit' about you," is indicative of dislike rather than discrimination. Cf. id. ("Alfano makes much of Brown's admission at trial that he disliked Alfano personally, but there is no indication that he disliked her because she was a woman."). Because the evidence proffered by the plaintiff could not support a conclusion that there was the level of severe or pervasive harassment necessary to establish a hostile work environment, no genuine issue of material fact exists with respect to Moore's hostile work environment claim.

Therefore, summary judgment is being granted with respect to Moore's disparate treatment and hostile work environment claims against Unkelbach.

### 3. Fowler

Moore alleges that she has been subjected to both disparate treatment and a hostile work environment. The evidence offered by the plaintiff shows that Fowler decided to require that youth sign the health information logs despite Moore telling her it was unnecessary, and that Fowler ignored Moore's input at a September 11, 2008 meeting held to discuss nursing assignments. Under the legal standard discussed above, this evidence is not sufficient to support a finding of an adverse employment action, so there is no genuine issue of material fact with respect to Moore's disparate treatment claim.

Regarding the hostile work environment claim, there is no evidence that Fowler did anything beyond occasionally disagreeing with Moore on work related issues. Under the legal standard discussed above, that is not sufficient to support a finding of a hostile work environment.

Therefore, summary judgment is being granted with respect to Moore's disparate treatment and hostile work environment claims against Fowler.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. No. 96) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Signed this 7th day of September, 2011 at Hartford, Connecticut.

                                                              /s/AWT
                                          Alvin W. Thompson
                                  United States District Judge